Case No. 16-5314, Grant Medical Center, Appelants v. Thomas E. Price, Secretary, United States Department of Health and Human Services Mr. Gibson for the appellants, Mr. Shaw for the appellate Thank you, Chief Judge Garland. May it please the Court, this appeal does not turn on whether the Secretary's acquiescence decision was reasonable. It turns on the law of bed counts, which today, and in this Court, requires the exclusion of swing observation beds from hospital bed counts. But even if the Court were to examine the Secretary's decision on his own terms, by looking at it as an administrative action frozen in time, it still should conclude that reversal is appropriate because it is an arbitrary decision to treat these hospitals differently without any rational justification for doing so. Specifically, there are at least two independent legal reasons why this Court should reverse the Secretary's decision that do not require it to examine the Secretary's acquiescence per se, but simply ask the Court to look at the law that controls the question of bed counts. The first is the clarifying regulation itself, and the second is the controlling law in this jurisdiction. The default rule of appellate adjudication is that current law applies in the absence of an impermissible retroactive effect. The Secretary does not dispute this principle of appellate adjudication. Let me ask, when you talk about the controlling law in this jurisdiction, what is the controlling law on bed counts? On bed counts, the controlling law is that they must be excluded. And that is a D.C. Circuit case? There is no D.C. Circuit case, Judge Garland. Generally, we think that we're the controlling law. I hate to put it that way. That we're the controlling law here, and if we don't have a decision, there is no controlling law yet. Well, certainly. Or, of course, the Supreme Court. Certainly, Your Honor, and I believe that that's a correct statement of the meaning of controlling circuit law. The argument of the hospitals in this case is that the parties actually agree that the controlling regulatory law, the law that is actually in effect and has never been altered, remains that the exclusion of swing and observation beds is required. You really don't mean controlling law. You mean the correct interpretation of the regulation is the one that you're offering. That's correct. And in addition to that, it's not merely the correct one, but it's one that the parties, at least in this case, agree. The Secretary absolutely agrees that the proper interpretation of whether it's the original regulation or the clarifying regulation in this jurisdiction does require the exclusion of swing and observation beds. And our argument is that given that that law needs to be applied, there's no conclusion other than reversal of the Secretary's decision. And this really leads to the second basis for reversal that doesn't require the Court to look at the acquiescence decision per se. And that is this Court's decision in Hartland and Judge Ludig's concurrence in the Department of Energy case both make clear that even if a Secretary's decision is justifiable, rational, reasonable at an agency level, that the moment that that decision is subject to judicial review, the judicial officers reviewing that must review it according to the law that applies in that court. Now, as the Chief Judge has indicated, there is no circuit law, decisional law in this court that would dictate that. But because the parties agree that that's the proper interpretation of whichever regulation applies, there is... Isn't the question before us whether the agency's decision to acquiesce in the Sixth Circuit was a reasonable one? It is not, Your Honor. It's not the question? No, it's not. And the reason for that is, in part, as articulated by Judge Ludig in the Department of Energy concurrence, the reasonableness of the Secretary's response to a judicial decision does not insulate that decision from review according to the law that applies. No, I didn't say it was insulated from decision. I said the question is whether it's reasonable. We can get to the question later about what law we apply, but isn't the basic question, was it reasonable? I don't believe so, Your Honor. Your Honor? I believe that the basic question first is what law applies, and that will tell you whether or not you need to examine the acquiescence decision for reasonableness. And the reason is because... Well, in this circuit, we review agencies' decisions for reasonableness, don't we? Arbitrary, capricious, contrary to law. That's the standard. The arbitrary and capricious reasonableness question arises when the Secretary has made a decision that relates to the interpretation of a statute or regulation. No, it doesn't. No, it doesn't. That's Chevron. I was asking about arbitrary, capricious, contrary to law. Standard arbitrary and capricious analysis. I guess the distinction that we would draw, Your Honor, is a distinction I think is set forth in this Court's decision in the Holland case, which is... Holland was a statutory case. Correct. Involving the interpretation of a statute. That's correct. But I believe that Holland draws a distinction between the reasons that an agency acquiesces versus what the decision is that's ultimately under review. The reasons why an agency may choose to acquiesce may ultimately be reasonable for administrative reasons and otherwise. But that is not the question that ultimately determines whether the decision stands. Whether the decision stands is dependent upon whether or not it, as an independent decision, can ultimately be justified. I'm sorry. I don't understand that. In Holland, the Court held that because the agency thought it was bound to apply the Eleventh Circuit's decision nationwide, it hadn't expressed its... it hadn't exercised its authority to interpret the statute. Right? That's correct. That isn't what we have here. This isn't an agency interpreting a statute. The question is, did the agency act reasonably when it decided to acquiesce in the Sixth Circuit's plain language interpretation of a total regulation? Did it act reasonably to acquiesce in that and simultaneous under all of the circumstances of the case? Isn't that... Isn't this just setting aside the law? Isn't that just... We get cases like that all the time. That's what this is. We're reviewing an agency decision. Is it arbitrary and capricious? I agree that you're reviewing an agency decision, but I still think it matters what the agency decision is that you're reviewing. And there is a distinction... What's the decision to acquiesce in the Sixth Circuit? And I don't believe that's the decision that's under review. I believe the decision under review... Is what? ...is to apply the bed-counting rule that includes swing and observation beds to this particular subset of hospitals. You mean the new rule? No, the rule that Clark announced that the Secretary disagrees with. Now, while that decision was precipitated by an acquiescence analysis, a decision of the Secretary to say,  the decision that this Court is reviewing is whether or not there is any basis for the Secretary to selectively apply that decision to this particular subset of hospitals. And the reason why I think that distinction matters is because the Secretary is not permitted to justify a decision to follow the Sixth Circuit's rule simply by invoking the Sixth Circuit's decision unless the Secretary takes the position that the Sixth Circuit's decision mandated. If it was a voluntary act, then the Secretary has chosen to apply a different bed-counting rule to a particular subset of hospitals when he acknowledges he was not required to. The PRRB decision says he was bound to follow the Sixth Circuit decision. That's correct, it does, Your Honor. Yeah. The Sixth Circuit ruled that the Secretary's interpretation was inconsistent with the plain language of the rule, right? So it said, the PRRB said, we're bound to follow that. That is what the PRRB said, and it is what the Secretary adopted as his decision. But it is not the position that the Secretary maintains before this Court. The Secretary's position before this Court is that his decision to apply the Clark bed-counting rule to these hospitals was a discretionary act that was a policy-driven choice. Aren't we reviewing the PRRB decision, right? That's correct. We're reviewing what it says. Correct, because the Secretary adopted that decision as his own. The PRRB decision became the Secretary's when he did not reverse or modify it. It says the Board agrees that the intermediary was bound by the Sixth Circuit's Clark decision. That's absolutely correct about what it says. That's the decision we're reviewing. That's correct, and I believe that it cannot be affirmed since the Secretary has acknowledged that he was not, in fact, bound to apply Clark, but did so as a matter of policy-driven discretion. And that was the lead argument in our reply brief, which said that no matter what this Court ultimately concludes, affirming the decision of the Secretary is not available, because the Secretary made abundantly clear at the agency level that the only reason that he was applying the bed-count rule of Clark to these hospitals was because he had to. The entire defense of that decision in this appeal in this Court has been predicated upon post hoc rationalizations of appellate counsel. Can I see if I can tease out exactly what the different issues you're presenting us with are? Please. You think that we are not bound by the Sixth Circuit, so if the only reason the agency gives for its decision is that it's bound by the Sixth Circuit and, in fact, it's not in this Court, that's arbitrary and capricious, correct? Certainly it is. And it gets no Chevron deference or our deference or any other kind of deference because they didn't exercise their discretion, right? That's correct. And we've already held that in several cases. Several, that's right. Okay. So now imagine that the agency were saying, which, as you point out, it didn't say, but if it did say in the PRRB, we're doing this for administrative convenience, we need this for administrative convenience, that would be reasonable in the sense of not being arbitrary and capricious, but it would not be reasonable in the sense of an interpretation of its own regulation unless we agree with that interpretation. Is that right? That's right, if I may, with an additional caveat or clarification, which is it is difficult to see how it could ever be an interpretation of their own regulation because by the Secretary's own acknowledgment it is only an interpretation that applies to a subset of hospitals. I follow that. And the part of Holland you're talking about is the part where we say administrative convenience, administrative ease is not sufficient because that is not an interpretation. Desirability and uniformity does not lead to Chevron deference, right? That's correct. So that would then leave us with the need to decide what the regulation actually means. Is that right? So in other words, if they get no deference, but if they are right, but if you are wrong about the meaning of the regulation, then you would lose, right? Except that they also agree with us on the meaning of the regulation, and therefore this Court doesn't need to pass on the question because the parties already agree on the meaning of the regulation. Would it matter if they thought there were two permissible interpretations of the regulation and they had chosen for themselves what they thought is the better one, but that they didn't think the Sixth Circuit's interpretation was not permissible? If they adopted it nationwide, it would present a very different and more defensible position. So you don't think there's any way in which there could be two different interpretations of the regulation, one that they prefer in most places and one that they're stuck with for administrative purposes because of the Sixth Circuit, as long as they're both permissible? Only if they were, in fact, stuck with it. And that's where I think the rub is. Good point. What if they're stuck with it because they think, and I assume we agree, that it's too difficult administratively to deal with it? I know you don't agree with that, but assume we do. Assume that we would agree with their administrative inconvenience argument. In that case, would it be permissible to have one interpretation for hospitals in the Sixth Circuit and another everywhere else? I would give two answers. The first is that if it were permissible, it still wouldn't change the outcome once that decision got reviewed in this court, so that it might be permissible as a matter of agency decision. But we wouldn't be able to defer to a permissible reading of the regulation, even if it's not the agency's preferred reading. If it were the agency's nationwide adoption of the court's decision for its own reasons. No, I'm only talking about adoption in the Sixth Circuit because that's where their administrative problem comes up. Right. The short answer is no. An administrative convenience justification is not adequate to satisfy the rational basis requirement for treating hospitals differently that are similar to the situation. I understand. That's your equal protection argument. I want to leave that one aside, just for purposes of the APA arbitrary and capricious interpretation of a regulation question. Our arbitrary and capricious argument, I think, is fundamentally indistinguishable from the equal protection one, which is it's the differential treatment that poses the primary problem. I understand. It's not per se. And I would note that one of the things that the Secretary gives rise to, and if I may, Your Honor, I'm well past my time, but if I can continue. Well, I have a question. I'm sorry? No, when you're done, I have a question, too. So go ahead. Is that the Secretary suggests that the position that the hospitals have taken would require a policy of strict non-acquiescence. And that's certainly not true, because there are a number of unique circumstances of this case that make it a different analysis. And this Court made clear in Hartland that each act of acquiescence or non-acquiescence has to be judged on its own merits. And two of those critical distinctions are, one, the true venue choice that is presented to hospitals, so that the applicable law was not entirely clear. And the second reason is because this particular decision of Clark produced both winners and losers among the regulated parties. That's all right. You did make those arguments in your brief. That's correct. Let's let Judge Schmidt take the last one. Suppose PRB had said, in addition to what it has said in its decision, suppose it had said, we've reviewed the Sixth Circuit decision and we believe that that's a perfectly reasonable view of our regulation. In other words, that's okay with us. Would it be different then, here, since the agency thought about it and decided not just that it was bound by the Sixth Circuit, but that the Sixth Circuit was right about its own regulation? If the agency truly thought that it was right. Suppose it said that. If it said that, it would have adopted the Sixth Circuit's view nationwide, not merely within the Sixth Circuit. And so the problem the agency faces is that it expressly, through its own statements, but also by the very act of only applying it to the Sixth Circuit hospitals. No, it didn't. What it did, its nationwide view is now incorporated into different regulation. They've issued a new regulation. That's correct, Your Honor. Okay, so my question is, if they had said, okay, the Sixth Circuit is right, we now understand the Sixth Circuit is right about our regulation. It requires the inclusion of swing beds, correct? Correct. Then would we – and we're going to issue a new regulation, which now makes clear that they have to be excluded. That's a different question. Would we then defer to that here? Setting aside your equal protection argument. I don't know that I can except to say that the JSM 109 memorandum then would have had to have applied to every hospital in the country. If they believed that that was the proper interpretation of the original regulation and meant to adopt it, they would have then said, the entire country is now bound by that correct interpretation. I see. And we will correct that now prospectively with a clarifying regulation. I see. But that's not what they did. I see. Okay. All right. Okay. Mr. Gibson, the sequence of events here after the Clark decision is that the Secretary issues the policy expressed in JSM 109, correct? I believe the clarifying regulation came first and then JSM 109 subsequently. So when JSM 109 is out, that's the policy of the department until changed. And when the PRRB says it is bound to follow the Sixth Circuit rule, isn't that correct because it's bounded by the policy statement which precedes it? The PRRB very well may be bound in that sense, but the Secretary is not. The Secretary ultimately is the arbiter of the memorandum. I understand that. So the Secretary had already made his decision in JSM 109, right? That decision was binding on the board. Right. So when the board comes up here, it seems difficult to imagine how the board, which is whose decision is under review and admittedly ratified by the Secretary, could be faulted on the ground that it wasn't really bound. The short answer, Your Honor, is that the ratification, the act of ratifying by the Secretary is what's essential. The board is not before this court. The Secretary is because the Secretary adopted the board's decision and was free to modify it or reverse it in any way. And when the hospitals presented to the board – Was that when the board was free to modify? No, the Secretary was free to modify the board's decision. And so when the hospitals argued that the clarifying regulation obligated the exclusion of swing and observation beds notwithstanding JSM 109, the Secretary could have then said to the board, while I understand your desire to comply with my memorandum, the hospitals are right. The clarifying regulation requires exclusion of these beds, and I can't apply JSM 109 to them. That was the choice that the Secretary made was to stand by that. And once the Secretary did that, the decision on review ultimately became the Secretary's decision. And so saying that the board was bound by JSM 109 because of its place in the agency hierarchy doesn't resolve the problem for the Secretary. What are you referring to as the clarifying regulation? That was the regulation that followed the Clark decision in October of 2003 that made it explicit that swing and observation beds should be excluded. But until such time as a new regulation was promulgated, right? No, that was the new regulation. I called the amendment. Okay, so that was effective after 2003? Yes, except our position, and this also was addressed in the briefs, is that the Secretary, frankly, has changed positions over the course of the appeal, initially arguing that it couldn't operate permissibly in a retroactive manner, and now says, well, it could, or at least I don't dispute that it could, but I'm saying that I intended to promulgate it only prospectively. And the Pope case in the Seventh Circuit makes abundantly clear that agencies are not free to simply pick and choose when their clarifying regulations will apply prospectively or retrospectively. But it has an effective date, right? It does, Your Honor, but the effective date is not what dictates whether or not it applies retrospectively. Here the agency has chosen not to apply it retroactively. The reason why that ultimately is nonsensical is because if it is a clarifying regulation, which the Secretary made abundantly clear it was, and the facts in the record demonstrate that it was, which is that it simply clarified longstanding agency policy, then it is simply a... Well, that means the agency could apply it retroactively. It doesn't mean it has to. But it's not a matter of whether or not the Secretary has to. It's a question of what is the law. And if it is by definition a clarifying regulation, it means the law then and the law before is and has always been that the beds must be excluded. That the Clark decision, while it is a disagreement with that, the clarifying regulation has no less of an application, both retrospectively and prospectively. In view of the Sixth Circuit's decision, it's hardly clarifying, right? I'm sorry? In view of the Sixth Circuit's decision, it's not clarifying. It is clarifying, and we... Why is that? Well, this possible spent problem... It required a new regulation to make clear that swing beds were excluded. It is in the very nature of a clarifying regulation, Your Honor, that it clarifies what the agency's position on the law is and has always been. And the Secretary conspicuously declines to rebut any of the analysis set forth in multiple pages of the briefing that the Sixth Circuit's retroactivity jurisprudence would absolutely permit the application of the clarifying regulation, even in light of Clark, to be backward-looking because it was the long-standing position of the Secretary. That is in the essence of the clarifying regulation. It's also why this Court has said that to resolve circuit splits, for example, agencies are permitted to issue clarifying regulations to tidy up that type of disagreement on the law. If that were not the case, then it wouldn't be permitted to apply retrospectively. But if it can tidy up a circuit conflict, then it has to, as a clarifying regulation, apply to everything except for pending claims, and that's what the other national mining case from this Court specifically says. Mr. Gibson? Yes. It seems from your position, and correct me if I'm wrong, that it would never be appropriate, maybe not even lawful, for an agency to acquiesce in the law of one circuit in administering its statute, acquiesce in the decision of a particular circuit without applying that circuit's law uniformly across the country. I don't think that's correct entirely, Judge Ginsburg. I think that that is correct in this instance, but the reason why that's wrong is in particular because of the venue choice provisions of the Medicare Act, which is that the hospitals that are all located in the Sixth Circuit are themselves not necessarily subject to the Clark decision because they have rights of appeal in this circuit. Well, no, wait a minute. That begs the question of what law is going to be applied. It does. When they come to this circuit. My question is, you're saying that law is the law of the Sixth Circuit, the agency should acquiesce or not acquiesce nationwide, one or the other. Well, there are also some other options, depending on what the Secretary's objectives were. I would submit that the Secretary was also entirely free to do exactly as he did at the agency level, while we have arguments why that's arbitrary, to simply do that in the moment that the hospitals filed in the district court in this circuit to confess judgment because, as he recognized himself in the St. Vincent case, the Clark decision is not binding in this court, and he agrees with the hospitals that in this jurisdiction. It is the law of this circuit, the policy of this circuit, to encourage agencies to acquiesce when there is a diversion circuit and to then deal with the problem. I believe that's the policy of this court, and obviously I defer to you, Judge Ginsburg, but the policy of this court with respect to intra-circuit acquiescence, which is where it is known where the venue of appeal will occur. It's interesting, actually. How could that be known? Some of the hospitals benefited from the Sixth Circuit decision and some would go back there for review of a board decision that was adverse, and some would come here as you did. That's exactly right, and that's why the Hartland case— So the board doesn't know where it's going to go or can't control where it's going to go, I should say. That's correct, and that's why the Hartland case is extremely instructive. The only difference in that case, apart from there being two actual circuit decisions as opposed to one circuit decision and then an agreement of the parties as to the law, is that the decision from the Sixth Circuit for the NLRB was actually in the NLRB's favor. The NLRB did exactly what the Secretary is doing here, which is it entered this court and asked this court to affirm its decision on the basis of law that applied only in the Sixth Circuit. Now, if the Secretary were willing to come to this court and argue the exact opposite of what her legal position— I recall the case, or maybe it's another. We had a whole series of NLRB cases on this same rule, right? Yes. And the court's concern was that the board was continuing to adhere to a position contrary to the one in this circuit, knowing full well, of course, that any employer has venue here as well as at home, and did nothing to solve the conflict. That was the problem. Nothing to solve the conflict. Never sought cert. Just kept mechanically turning out decisions that would inevitably be reversed. That's not what we have here. Here the Secretary acted immediately, or promptly, to heal the distinction between the circuits, correct? Even if that were actually what the Secretary did or the objectives were, once the decision is reviewed in this court, just as once the decision, the NLRB, was reviewed in Heartland, the Heartland case that is cited in the briefs is the issue of the attorney fee award for bad faith litigation. We're not asking this court to conclude that the Secretary is engaged in bad faith. We're simply asking if Heartland, if the Secretary's position here is correct, then Heartland would have lost on the merits, because this court would have said, yeah, NLRB, your decision at the agency level was justified, because it's consistent with the Beverly Health decision out of the Sixth Circuit. And there's no reason why we shouldn't apply that. It's perfectly reasonable. It's not arbitrary to apply the law of the Sixth Circuit to a Sixth Circuit entity. And even though you're here in this court, we're going to allow you to win. In fact, that's the opposite of what happened. Now, I realize that the bad faith issue arose because this court had binding circuit law. It's because it had arisen time after time, and the claim was only plausible, even, because the board was continuing to simply ignore the precedent of the court, imposing on the parties the cost of getting it reversed each time. Understood your argument. But I do think the analogy is apt. Okay. We'll hear from the government. Thank you. Thank you. May it please the Court. Waley Shaw for the United States. Judge Garland, I would like to start by turning to your question about deference and whether it's appropriate to defer to more than one interpretation of an agency's regulation. And I would just point the Court to this Court's decision in Holland. And in that case, this Court specifically recognized that deference may be appropriate, even if the agency's view of the correct interpretation of the statute, again, that's somewhat different because that was a statute and not a regulation, but this Court recognized that even if the agency's view of the correct interpretation of the statute differs from the one that it is acquiescing in, deference to that acquiescence position may be appropriate, so long as the agency believes the current interpretation to be a reasonable one. That's what I was looking for. What page is that on? That is on page 819 of Holland. So you're instancing a situation in which there may be more than one reasonable interpretation. Exactly. And I think in this case, the regulation at issue does not expressly state whether observation beds and swing beds should be included or excluded. So the regulation is ambiguous, and the Secretary has determined that both... I'm sorry. Can you just tell me? I'm still looking for that. 819? Yes. What are the words actually? I can give you the full citation. I have the citation. Just read the quote that you're just quoting. Yes. Let's see. I'm sorry. If you can give me one second, I can find the actual opinion. The one that said, in short, we cannot now determine? Is that... I'm sorry. I could just take one minute to pull up the opinion. Yeah, go ahead. Didn't you just read it? You just read it. I just have an excerpt. I'm sorry. I have an excerpt. Oh, I see. If you read the excerpt, I'm not finding the words. Just read the excerpt. That was pretty good. So... That's all you need. So the excerpt that I had is, even if the agency's view of the correct interpretation of the statute differs from the one currently in effect, and then that's the end of the quote, that deference may be appropriate, and then quoting again, if the agency believes the current interpretation to be a reasonable one. So I guess where I'm looking at is page 819 of the opinion. There at the end of the first partial paragraph, the sentence starts. So by the use of your ellipsis, transform this a little bit. I am looking for the question of whether you can have two different permissible interpretations. I don't think that's what we were saying in Holland. In Holland, they were asking whether they had changed their mind, and that was now the reasonable interpretation for which they wanted deference. But let me just back up for one second. Let's see if we can go through the same set of questions I had. I look at the PRRB, and I don't see anything other than the fact that you thought you were bound, not you personally, that you were bound by Clark and not because of the JSM, which is not cited at all in the findings of conclusions of law and discussion. But rather, and I'm just going to quote it, the separation of powers doctrine requires administrative agencies to follow the law of the circuit whose court's jurisdiction over the cause of action, in the absence of a controlling decision by the Supreme Court, the respective courts of appeals express the law of the circuit, as there is no controlling Supreme Court decision, the board finds that the intermediary is obligated to follow the relevant decisions of the Sixth Circuit. That was the basis of the PRRB decision, right? I don't entirely agree with that. And first, I would just point out that in that section, the board is largely paraphrasing the administrator's earlier decision in St. Vincent, which included very similar language but then also went on to discuss why acquiescence was not required. I totally get it. And if they had said, and St. Vincent also said there was an administrative burden issue, then I wouldn't be asking this question. Right. There's no reference to administrative burden. I'm right about this, right? In the PRRB, there's no reference to administrative burden, administrative convenience. And the only aspect of St. Vincent that they quote is the separation of powers part. I think that's right. But I would just point to some other parts of the PRRB decision. So, for example, at J15, the PRRB cites the stipulation of the parties, which is that the providers received adjustments to their Medicare reimbursement based on the application of JSM-109. Yes. And then, again, at J20, the board states that the board concurs with the administrator in St. Vincent. And then the board provides the quote that Your Honor just stated. But in doing so, I think it's clear that the board was relying on the reasoning given by the administrator in St. Vincent but basically giving a shorthand version of that. That was not as detailed as what the agency had previously provided. But this is a discretionary decision that the administrator had already made in two forms, both in JSM-109 and in St. Vincent. So you're saying if we were to read St. Vincent together with this, we would get the administrative convenience, right? Now we get to the next question. Is administrative convenience enough? Well, first, I don't think – I wouldn't characterize it as administrative convenience. You can put any other word, even administrative necessity. Is that enough? Yes. I mean, I think the administrator grounded it in the purposes of the statute. I mean, the administrator certainly – a scheme in which hospitals were able to pick and choose the bed count formula that they are going to use is not an orderly reimbursement scheme. Right. Is that an interpretation of the regulation? No, that is a rationale for the agency's interpretation of the regulation. Imagine that the regulation expressly said – let's say the regulation said that these particular beds, observation and swing beds, are excluded for all purposes. Let's say it said that. And the Sixth Circuit just, for some reason, missed that point and said, no, no, they have to be included for all purposes. Or what if they said, we don't care what HHS says. We like swing beds, and we're going to include them. Now, would you be able to make the same argument? It would certainly be more difficult. That's not the question I'm asking. I'm asking if the regulation says the sky is blue and the Sixth Circuit said the sky is red, for administrative purposes, necessity, whatever, would you be able to go with the Sixth Circuit's reading even if the plain language were the opposite? No. I think as part of the review of whether the agency's acquiescence decision was reasonable and permissible in this case, this Court can consider whether the interpretation that the agency adopted through its acquiescence decision was plainly erroneous or inconsistent with the language of the regulation. Okay. Now the question is, did the agency consider whether this was a permissible interpretation of its own regulation in terms of interpreting its regulation, or did it rest only on administrative considerations? No. The agency did determine that this was a permissible interpretation. Where do you find that? So in JSM 109 and JA 37, the administrator finds that the regulation's text was silent regarding the counting of observation and swing bed days. And then, again, that's at the top of 37, the first full paragraph, right? Yes. I don't have the opinion. I do. Okay. So I think you could have said, yes, it's silent. In fact, that's your basic argument. It's silent, therefore it's ambiguous, and therefore we're free to interpret it as excluding. But you didn't say here, it's silent and therefore Clark's interpretation is a reasonable one. This paragraph is all about how wrong Clark is. Clark told you that the plain reading required the opposite reading of yours. In Clark, two hospitals challenged the exclusion. The regulation's text was silent, however. Despite our consistent and longstanding policy of excluding, the court said it could not be reconciled with the plain language and that our interpretation was therefore impermissible. So I have to say this strikes me as nothing other than, and maybe appropriately, a challenge to Clark's reading, that Clark said on its face, you cannot exclude these beds, and you're saying, well, wait a minute. It's not even mentioned one way or the other, so we can't. Isn't that what you're saying here? You're not saying that Clark was a reasonable reading of our rule. No, I think there are two distinct questions here. One question is whether the reading is permissible, and the other is whether it is the best reading of the regulation. And so in acquiescing— Excuse me. That wasn't the Sixth Circuit view, right? The Sixth Circuit view was there was only one reading of the regulation, right? Plain language. That's right. That was the Sixth Circuit's view. But in acquiescing in Clark, the Secretary did not adopt the reasoning of Clark and say that we agree that our longstanding interpretation is impermissible. All the Secretary had to do to acquiesce was find that the Sixth Circuit's interpretation was reasonable, regardless of— Where did it say that? That's what I'm looking for. Where did it say that? That the Sixth Circuit's reading was a reasonable reading of our regulation. I don't find—I see the paragraph you're looking at. That's the one you discussed in your brief, but I don't see that as being the point of that paragraph. I think I cut you off when you were about to point to another place. Unfortunately, I don't have another citation handy. But I do think that certainly the Secretary indicated that the regulation was not— and has maintained that position both in Clark and now before this Court. So I think—I'm not sure if there's a substantial difference between that and saying— Well, let me ask you this. You agree—your opposing counsel said that the parties agree that its view, Grant's view, of the regulation is the same as the agency's. Is that right? This question— The original regulation. Right. The answer is nuanced because the agency does think that the better interpretation of its original regulation is the interpretation that excludes observation beds and swing beds. But that said, the agency also determined that given the Sixth Circuit's decision in Clark, given the desire to respect separation of powers and the rule of law, and given the need to operate an orderly reimbursement scheme, that the better interpretation within the Sixth Circuit, as applied to hospitals in the Sixth Circuit, is to adopt the— So would we not at least have to decide— —for that interstitial period? Would we at least not have to decide whether it's the better interpretation or at least a permissible interpretation? I think this Court can consider whether the interpretation is permissible. I think under normal deference principles, this Court may not decide whether either interpretation is the best interpretation. That's under our—and that's if you were telling us what you thought was the right interpretation. I don't know of an our case that goes only on the question of what's a permissible interpretation. The agency normally says, this is a permissible interpretation, and this is the one that we come to, not this is a permissible interpretation, pick one. So I would point to this Court's decision in National Environmental Development Association, and that was a case in which the, again, the agency acquiesced in an adverse decision of the Sixth Circuit and only within that circuit. And ultimately this Court did strike down that decision, but only because the EPA had regulations requiring that it have a uniform interpretation of its regulations. And this Court specifically recognized that were it not for that— this Court specifically recognized that the EPA might revise its uniformity regulations to account for regional variances created by a judicial decision or circuit splits. So it might say it again? EPA, in order, if— I got this question, might it revise its regulations? Might revise its uniformity regulations to account for regional— Yes, it could revise its regulations, which is what you did here in order to fix the problem. It doesn't say it could reinterpret its regulations differently in different areas. No, I think that is what the Court was saying, was that were it not for the existence of an EPA regulation requiring that interpretations of regulations be uniform nationally, then the EPA could have adopted a different interpretation in the Sixth Circuit than it adopted in other circuits, and that if the EPA wanted to achieve that result, then all it had to do was revise the regulation requiring national uniformity. Right, it would have to revise the regulation. Not the substantive regulation. It would have to delete the part that talked about national uniformity. Right, but the national uniformity regulation was a separate interpretation from the one that was— I'm sorry, it was a separate regulation from the one that was actually being interpreted by the agency at the time. Do you agree with this other part of national environmental development in the last paragraph, which says the doctrine of circuit non-acquiescence does not allow EPA to ignore the plain language of its own regulations? That's correct. So if there were a plain language here, you couldn't do this? I think that's correct. And that is the reason why I think that— I just want to get to Judge Ginsburg's question about Heartland. I think that is an important reason why this case is different from Heartland because— well, there are a few reasons, but Heartland, first of all, was a statutory interpretation case, and it was a case in which the agency received no deference because it had no rulemaking authority under the statute. And therefore, when this court interpreted the statute contrary to the agency's position, there was no way for the agency to adopt any interpretation other than what this court could have adopted. In this case— They gave us the labor board? Yes, that's right. They have rulemaking authority? I'm sorry, maybe I misspoke. This court expressly found that the agency could not get Chevron deference under the statute. So in this case, certainly we think that deference is due. So in the end, the result is that there is a permissible range of interpretations. The agency thinks one is better, and it has adopted that nationwide. But in the Sixth Circuit, given the circuit precedent there and given considerations of orderly administration, the Secretary determined that the better interpretation to adopt in that circuit is the Sixth Circuit's interpretation. Well, you just imported the orderly administration, which you couldn't find earlier, right? You just attributed it to the Secretary's decision, his administrative concern. But in your colloquy with Chief Judge Garland, you were not able to point to any administrative concern. Yes, I think it's fair to read the PRRB's decision below as incorporating the rationale for the acquiescence decision that the administrator had already made and explained in two different places. But if this court were to— But did the court ever explain it with reference to administration? Oh, certainly the Secretary did expressly cite in St. Vincent the need for orderly administration. So I'm looking at JA-52. This is part of the St. Vincent adjudication. The Secretary or the administrator said that CMS has decided to apply the JSM to ensure the orderly administration of a complex and time-sensitive program, and despite the venue uncertainty in PRRB cases. I'm sorry, where are 52? Let's see. So this is at the—this is in the second full paragraph at the— Orderly administration. Yes, at the bottom of the second full paragraph on JA-52, CMS has decided to apply the JSM to ensure the orderly administration of a complex and time-sensitive program, and despite the venue uncertainty in PRRB cases. Okay, and I'm sorry, what is the document we're looking at? This is an adjudication in which the administrator decided to acquiesce or to follow the JSM-109 decision in acquiescing in Clark. I'm sorry, were you done, Doug? Yes. Yeah. So your view in response to the Chief Judge's earlier comments, you said we should have looked at the PRRB decision alone. It's apparent from its language that it was relying—trying to accomplish— which then itself relied on JSM-109, right? Yes. Okay. And that therefore we should operate on the assumption that the agency understood that it wasn't technically bound by Clark, right? Yes. That it had options, right? Yes. Okay. What, under the circumstances of this case, were its options other than what it did? What could it have done differently? It did have other options, but none of those options were attractive from a policy standpoint. Let me just—my question is, I mean, one of them certainly wasn't cert, right? You wouldn't file a cert petition over a circuit interpretation of a regulation. You'd just change the regulation, right? So— Right. I mean, it was technically possible, but certainly not a wise policy decision. No, I mean, SG would never authorize it, right? Why would you do that? So I'm trying to find out what the agency's options were under the circumstances of this case. Well, the agency could have sought rehearing in the same court. The agency could have sought relief from Congress. It could also have decided to acquiesce nationwide in Clark. But that, of course, is a decision that would present other sorts of problems as well. The kinds of problems that were discussed in this Court's opinion in Holland. So, again, we agree that— So don't we have to look then—because I take it you agree the question before us was the PRB's decision reasonable under the circumstances. But we wouldn't know any of that from the language in the decision we're reviewing, would we? That it had considered these other options and rejected them for the following reasons. The secretary did not lay out in detail all of the options. Well, not in striking detail. Didn't lay them out, right? There's nothing. You're right. There's no discussion of, for example, whether to seek cert or seek rehearing. Rehearing, I get. But I just don't understand why cert's even being discussed here. Right. No, we are not arguing that that would have been a wise course in this case. And, in fact, there was no circuit split at the time, so the odds of obtaining cert in the Supreme Court would have been exceedingly low. Even if there is a circuit split on an agency interpretation of a regulation, the agency has complete control. It can just change the regulation. I mean, I certainly agree that that was not a— That's why this case is different from Holland. Yeah, I agree that that would not have been a wise course, and certainly that that's not the course that the secretary pursued. I think, again, if we look at St. Vincent, for example, although the secretary does not expressly discuss all of the available options, the secretary does understand, certainly explain, that it is a discretionary decision and that the secretary has chosen acquiescence as the best out of those options. Further questions? No. Okay. Well, I know we're out of time for the petitioner, but nonetheless, if everybody else gets extra time, you can have a little more time, too. Can you do it in two minutes, please? Two minutes. Thank you for the time, Your Honor. I would ask the Court to take a step back from the current discussion and to remember that regardless of the propriety of the agency's action at the administrative level, there is a question of law that exists once that agency decision is reviewed in this Court. And the question of law that is presented is one on which the parties agree. They agree that the original regulation, the better reading, is to exclude swing and observation beds, and they agree that current law as codified in the clarifying regulation expressly requires the exclusion of swing and observation beds. As I understood what he described as a more nuanced position of my putting of that point, he said that the Sixth Circuit's interpretation is permissible. He said, yes, the secretary thinks your interpretation is the better of the original regulation. Clark's interpretation is a permissible one, and in light of that and the administrative problems, the better view or the better interpretation of the regulation in the Sixth Circuit to avoid administrative problems is to go with the Sixth Circuit's view. But that is not a rule of law decision rule that would be appropriate for this Court to employ when it reviews the decision on its own. This is the analysis that Judge Ludi goes through at length when he says, even if I can find it is arguably defensible for an agency to pick whatever law it chooses at the agency level. When it is reviewed in that court, he must review it according to the law that applies there. And the question that now has been presented to the Court is, does the secretary have the ability, whether by JSM 109 or some other ipsa dixit, to tell this Court what law it will apply to the review of his own decision, even though he acknowledges that within this jurisdiction, he believes the proper interpretation of the regulation is to exclude those bets? I would submit to the Court that the outcome of this case is not merely a question about the reasonableness of an agency response to a court decision. It's about what power does an agency have to insulate that decision from review according to the very law that he acknowledges would require the opposite result and is being reviewed by a court that has, before it, no opposing arguments about what the proper meaning of either of the regulations is. The Court doesn't have any further questions. Apparently not. All right, we'll take the matter under submission. Thank you. Thank you very much.
judges: Garland, Tatel, Ginsburg